GREEN *et ux. v.* PENNSYLVANIA R. Co.[1]

(*Circuit Court, E. D. Pennsylvania.* October 14, 1887.)

1. CARRIERS — OF PASSENGERS — INJURIES TO PASSENGERS — DANGEROUS AP-
PROACHES.

Railroad companies are bound to keep in a safe condition all portions of
their platforms and approaches thereto to which the public do or would natur-
ally resort, and all portions of their station grounds reasonably near to the
platforms where passengers or those who have purchased tickets with a view
to take passage on those cars would naturally be.[2]

2. SAME—NEGLIGENCE.

It is negligence in a railroad company to leave unguarded a hole in a pas-
sage-way at a railroad station likely to be employed by persons going to and
from the company's cars.[2]

3. SAME—MEASURE OF DAMAGES—COMPENSATORY.

Where the injury inflicted is not the result of either wanton or willful wrong,
only compensatory damages will be allowed.[3]

At Law.

This is an action for damages for injuries alleged to have been received
by Mrs. Anna M. Green, wife of Hiram Green, of Camden, N. J., on
October 12, 1882, at East Moorestown station, upon the Pennsylvania Rail-
road in New Jersey. Mrs. Green, then aged 23 years, married, and hav-
ing one child, had, upon the day of the accident, been to the fair at
Mount Holly, and had returned to East Moorestown station, near which
she then lived, upon a train on the Pennsylvania Railroad, arriving be-
tween 7 and 8 o'clock in the evening. The night was very dark and
misty. She was accompanied by her little boy aged four or five years.
Upon alighting at the station she found herself near the east end of the
station building, and, wishing to take a stage from the station to her
home at once, and without pausing on the platform, went, leading the
child with her right hand, down a dark passage-way upon the east side
of the station, in order to reach the rear of the building, where the stages
usually stood, turned sharply to the right, and went along the rear of the
station. About midway the rear of the station she fell into an opening
constructed in the ground to form an entrance to the basement of the
station. The uncontradicted evidence showed that the entrance-way was
in the condition in which it had been originally constructed; that there
was no light at the east end of the station, in the eastern passage, or in
the rear of the station; that stages were usually to be found standing in
the rear of the station outside a line of posts, and that it was necessary
to go along Chester avenue to go to Moorestown. The evidence was con-
tradictory as to the existence of a railing along the top of the posts, and

---

[1] Reported by C. Berkeley Taylor, Esq., of the Philadelphia bar.

[2] Respecting the duty of railroad companies, as carriers of passengers, to maintain
safe and proper station accommodations and approaches to trains, and their liability
for injuries caused by defects therein, see Ryan v. Railroad Co., 1 N. Y. Supp. 899, and
cases cited in note.

[3] As to when punitive damages may be allowed in actions for personal injuries, see
Railroad Co. v. Roberts, (Ky.) 8 S. W. Rep. 459 and note; Railroad Co. v. Arnold, (Ala.)
4 South. Rep. 359.

as to the use of the eastern passage by passengers. But upon this question the plaintiff testified as to herself that she had frequently, during the two years preceding the accident, arrived at this station after dark, and at other times, that she had never ridden home before, but had walked, going along the platform to Chester avenue, and thence home; she knew the stages stood behind the station, having seen them there from Chester avenue. She had never been in the rear of the station before. She had never gone down the eastern passage before, nor did she see other people do so at this time. She knew there was a water-butt upon the corner of the station, which was raised about 12 inches from the ground. She had seen this from the platform of the station upon previous occasions, and walked around it upon the night of the accident. The evidence upon the part of the defendant was decided that neither this passage-way nor this rear portion of the station were intended to be used by passengers, and that, if they were so used, it had no knowledge of such use. Mrs. Green, having turned the corner around the water-butt, proceeded along the line of the building, until she fell into the opening, bruising her knees and forehead. It was so dark she could not see the opening, of the existence of which she was ignorant. The stage which she wished to take was standing diagonally to the wall of the station building west of the opening; the horse attached to it being hitched to a post, with his head towards the hole, and with the rear of the stage towards Chester avenue. At the time of the accident Mrs. Green was a vestmaker; and evidence upon her behalf was produced to show that she was in good health, and free from organic or constitutional disease. In falling into this opening she received a wrench or jar which it was claimed produced Pott's disease of the spine, and caused her present condition. Upon the part of the defendant evidence was produced intended to show that she had a predisposition to this disease, which would naturally have resulted in her present condition, and that, had there been no such predisposition, her present condition could not have been caused by such a fall.

Verdict for plaintiff for $8,750, and motion for new trial overruled.

*Wescott, Melick & Robbins*, for plaintiff.

*John Hampton Barnes* and *George Tucker Bispham*, for defendant.

McKennan, J., (*charging jury.*) The plaintiff in this case seeks to recover damages for an injury alleged to have been sustained by falling into a hole, a passage-way, into a cellar under the defendant's station at East Moorestown, state of New Jersey. It appears that on the 12th of October, 1882, she visited the fair at Mount Holly, and returned on one of the defendant's trains to the station at East Moorestown, alighted from the cars very near or beyond the east end, as she alleges, of the station building. It was a dark night; very dark. She was accompanied by her little child, and she concluded to take a carriage from the station to her home. She passed down a pathway on the east end of the station in the direction of where she had seen carriages standing before, and in going to the usual place at which carriages were to be found, passing over the ground

of the defendant, she fell into this passage-way, which was unfenced and unguarded, which she did not see; and that the injury of which she complained was thereby sustained.

It is obvious that the liability which she seeks to enforce against this company rests upon its alleged negligence in providing the necessary safe-guards against injury to persons who are passing along, as this woman was, from the platform of the station to a conveyance behind it; and it is necessary that that should be made apparent by the testimony as the first question to be established by the testimony on the part of the plaintiff. I do not propose to restate the testimony of the witnesses,—you have heard such numbers before you,—but simply to indicate the questions this case, and the principles of law by which you are to be governed in the determination of the cause, and to do it in the briefest possible manner.

What, then, was the duty imposed by law on the railroad under the circumstances? I give that to you in the very concise language of Chief Justice DILLON, in the *Case of the Chicago & N. W. R. Co.*, 26 Iowa, 124, that they are bound—that is, the railroad company is bound—to keep in a safe condition all portions of their platforms and approaches thereto to which the public do or would naturally resort, and all portions of their station grounds reasonably near to the platforms where passengers or those who have purchased tickets with a view to take passage on those cars would naturally or be liable to be. Was the course pursued by this woman, the direction which she took, the ground over which she passed, ordinarily used by passengers, coming to or going away from that station? If it was, then it was the duty of the railroad company to provide all such protection as was necessary to secure passengers going to and coming from that depot from liabilities to danger or injury. This passage-way or hole was entirely unguarded, and, as is evident from what occurred on this occasion, persons in passing that way were liable to fall into it. If it was, then, the course or pathway usually employed by persons,—not exclusively employed by persons who were going to and from the railroad, but usually and likely to be employed by persons going to and from the railroad,—then it was the duty of the railroad company to provide all reasonable and proper protection against injury to persons passing that way, and their omission to do so would amount to negligence; but that is a matter for you to determine under all the circumstances. I simply indicate generally the legal duty of the railroad company, and it is for you to determine whether, under all the circumstances, that duty has been performed or not. If the railroad company failed thus to perform the duty which the law required of it, negligence would be imputed to it, and it would be liable, so far as that fact is concerned, for any injury sustained by a person lawfully at that place. That is the fundamental fact in this case, to which your attention must be directed, and which you will primarily determine in your consideration of this case.

If negligence is imputable to the railroad company, then it would be your duty further to inquire whether the injury complained of was due

in any measure to want of prudence, want of care and cautiousness, or the negligence of the plaintiff. Although the railroad company might have been guilty of negligence, which, under ordinary circumstances, would render it liable for injuries sustained by persons lawfully in that place at the time, yet, if the person contributed by his or her own wanton imprudence and lack of caution to the injury, the defendant would not be liable. It is not for us to attempt to measure the degree of culpability of either party. If the plaintiff is chargeable with contributing to the injury of which she complains by want of the caution and prudence which the law requires of her, then the person whose negligence is shown is not liable for the injury complained of. In other words, upon her rested the duty of such care and caution which may be reasonably expected to be observed by reasonable persons under all the circumstances. In the first place, was it prudent for this woman to take the direction which she did in passing to this conveyance? The night was very dark, and, as she testified, it was the first time she had ever passed in that way to or from the station. At the western end of the platform was a pathway leading to the side and to the rear of this station, and to the place where carriages were stationed to receive passengers, or waiting to receive passengers. At the end of the platform, and throwing light upon that path, was a lamp kept there for the very purpose of lighting it and enabling passengers to go to and from the depot with safety. That was the path which this woman had always pursued before in going to and from that depot. According to her own testimony she passed along the pathway, came down Chester avenue, and passed along the pathway leading along the western side of the depot. She was accompanied by her child, and that, perhaps, was an additional admonition to her to pursue the safest course,—the one with which she was familiar,—and the night was very dark. There was no light in the rear of the depot; and, in view of all these circumstances, did this woman observe such care and caution as might reasonably be expected to be observed by reasonable persons? If she did not, then negligence is imputable to her, and she is not entitled to recover. If she did, however, and the company is guilty of negligence, as I have defined it to you according to the legal definition, then she is entitled to recover.

She complains of an injury sustained to her by this fall. You have had that fully explained and discussed before you, and you have had a large mass of evidence touching her present condition. Apparently the woman is disabled, and presumably or inferentially from the evidence she has been a victim of protracted suffering. Is all that due to the fall which she received, as described by her and by Mr. Walton, when she fell into this hole. In other words, is this injury traceable to that fall, and was the fall the cause of it? Because, if it was not, if she did not sustain any injury by falling into that passage-way, even though the railroad company may have been negligent, and she may have been free from fault, she could not recover any more than mere nominal damages. You have had a great deal of evidence; and the learning in reference to the disease with which she is confessedly afflicted now has been almost

exhausted, and I do not propose to discuss that in detail. You heard it, and you heard a very full statement of it by counsel. Is the injury from which she suffered traceable to the fall in that hole as its cause. She says, and her husband says, and some others have said, that before she fell into that place she was in apparently good health, with the exception that she had an abscess; and she testified, and so did her husband, that for some time before she met with this accident the abscess had entirely healed, and she did not suffer in any degree from it. So that you have the coincidence, at least, that after—and immediately after —she met with this accident she suffered from the symptoms which she has described, and which the physicians on both sides say have resulted in Potts' disease of the spine. Whether this injury is the cause of that or not is for you to determine under the evidence, and I will not detain you or weary you by referring to it in detail. You must be satisfied under all the evidence that the fall which she received on the occasion produced or led to the injury of which she complains now, and the suffering under which she has labored for some years. If you come to the conclusion that the defendant omitted or failed to perform a duty in reference to the protection of persons passing that way from injury, which the law imposes upon it, and that the plaintiff did not contribute to this accident by her own want of proper care and caution, under all the circumstances, and that the injury under which she is suffering now was the result of that fall, then it will be your duty to determine what measure of compensation shall be given to the plaintiff under the circumstances. You will remember that nothing more than compensation would be proper for the jury to allow. There was not wanton or willful wrong committed by this railroad company, or by any of its agents; all that is claimed, and properly claimed, is that it was derelict in the performance of some duty which the law imposed upon it, and in consequence this plaintiff suffered injury. So that, if you come to that branch of the case, you will allow such compensation—such damages—to the plaintiff as will compensate her for the suffering which she has already endured, and for the disability under which she is apparently suffering. Excessive damages in cases like this are not to be allowed or found by the jury; they are not to measure them by their own sympathies for the unfortunate condition of the person who has suffered, but they are to measure them only by the rule of compensation to the party claiming, and for what she has suffered, and for her present condition.

I have been asked by the defendant's counsel to instruct you upon certain points. *First.* "There is not sufficient evidence in the case to maintain the cause of action on the part of the plaintiff as set forth in the first count in the *narr.*, and hence there can be no recovery by the plaintiffs under that count." That point I deny. *Second.* "The evidence in the case is insufficient to maintain the cause of action as set forth in the second count in the *narr.*, and hence there can be no recovery by the plaintiffs under that count." That point I deny. *Fourth.* "The railroad company is held only to responsible care, so far as means of ingress and egress to and from its stations are concerned." That point I affirm, as I have

already stated to you.  *Fifth.* "To entitle the plaintiffs to recover in this case it is not sufficient for the jury to reach the conclusion that the present condition of Mrs. Green is possibly due to the fall in October, 1882. The jury, if they find for the plaintiffs, must have a reasonable belief, based wholly upon the evidence in the case, that the injury complained of was actually the result of the fall."  I affirm that point, as I have already stated to you in the general remarks that I have made.  *Sixth.* "Before the plaintiff can recover in this action, she must show by a preponderance of the evidence that any injuries, ailments, or diseases from which she is now suffering, if any such there be, are the result of her injuries sustained at the time of the accident in 1882."  That point I also affirm.  *Seventh.* "Under all the evidence in the case the verdict must be for the defendant."  I refuse this point.

So that, gentlemen of the jury, to restate the questions involved in this cause in very few words:  You must be satisfied, in the first place, that the defendant failed in the performance of its legal duty in not providing necessary safeguards at this place where this accident occurred. If you are satisfied that under all the circumstances the railroad company has done all that could be reasonably required of it for the protection of persons lawfully passing in the vicinity of this passage-way, then the defendant is not derelict in any sense that would make it liable in this case, and your verdict should be for the defendant.  If you are satisfied that the defendant has failed in the discharge of the duty imposed upon it by law, under the circumstances that I have given you as to that, and that the plaintiff by the want of reasonable and proper care and caution contributed to the injury of which she complains, then, also, irrespective of the first inquiry in the case, your verdict should be for the defendant. If you are satisfied that negligence resulting in this accident is imputable to the defendant, and that no fault is shown to have been committed by the want of observance of proper care by the plaintiff, then you must be satisfied that the injury of which she complains resulted from the accident as described to you.  If she was not hurt, and her present condition is due to other causes, then your verdict should be for the defendant, because her damages would be inappreciable, merely nominal, in that event.  If you are satisfied that the defendant was negligent, and that the plaintiff was not, and that the injury of which she complains resulted from the accident, then you will give such damages as will be a fair compensation to her for the pain and suffering which she has endured, and for the permanent disability under which she is at present.